# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHAEL FALLON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | CIVIL ACTION <br><br> No. 09-1272-JWL |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). The court determines that the ALJ erred in evaluating Plaintiff's "Whipple procedure" surgery in 2003, and that the error is not harmless as argued by the Commissioner. Therefore, the court ORDERS that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.      Background**

Plaintiff applied for DIB on November 9, 2005, alleging disability since

September 1, 2001.[1] (R. 15, 105-07). The application was denied initially and upon

reconsideration, and Plaintiff requested a hearing before an administrative law judge

(ALJ). (R. 15, 61, 62, 75). Plaintiff's request was granted, and Plaintiff appeared with

counsel before ALJ Michael R. Dayton for a hearing on April 24, 2008, and for a

supplemental hearing on November 4, 2008. (R. 15, 32-60). At the hearing, testimony

was taken from Plaintiff, and at the supplemental hearing, testimony was taken from a

vocational expert who had appeared at both hearings. (R. 15, 32, 35-47, 48, 51-58).

On February 9, 2009 ALJ Dayton issued a decision finding Plaintiff is not disabled

within the meaning of the Act, and denying his DIB application. (R. 15-31). He

determined Plaintiff has not performed substantial work since September 1, 2001 and has

a combination of severe impairments including a history of pancreatic surgery, chronic

pancreatitis, malabsorption syndrome, vitamin B12 deficiency, subacute combined

degeneration of the spinal cord, major depression, alcohol abuse, and headaches; but that

---

[1] Plaintiff was previously entitled to DIB from February 2002 through September 2004. (R. 15, 109-10, 113-14). His benefits were terminated due to medical recovery. Id. at 15. As the Commissioner argues, Plaintiff did not request the ALJ to reopen the prior decision, and does not assert that the ALJ worked a de facto reopening. (Comm'r Br. 2 n.1). Therefore, as the ALJ noted, "The issue is essentially whether the claimant has been disabled from September 1, 2004 through the current date." (R. 15).
     Plaintiff did not exhaust his administrative remedies with regard to the Commissioner's decisions either to grant or to terminate the previous period of disability, so those decisions are res judicata, and the court is without jurisdiction to consider any alleged disability prior to that period or the propriety of the termination decision. Brown v. Sullivan, 912 F.2d 1194, 1196 (10th Cir. 1990) (citing Califano v. Sanders, 430 U.S. 99, 107-09 (1977)). Therefore, the court's review covers the time frame from September 1, 2004 through the date of the ALJ's decision.

he does not have an impairment(s) or combination thereof that meets or medically equals the severity of any impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (Listing of Impairments). (R. 17-22). The ALJ then considered all of the record evidence; discussed Plaintiff's allegations of symptoms resulting from his impairments, Plaintiff's wife's third-party report, the medical evidence, and the medical opinions; and assessed Plaintiff with the residual functional capacity (RFC) to perform a range of medium work limited by significant restrictions in postural, manipulative, environmental, and mental abilities. (R. 22-29). Based upon the RFC assessed and the vocational expert testimony, he concluded that Plaintiff is unable to perform past relevant work, but that when also considering Plaintiff's age, education, and work experience, jobs of which Plaintiff is capable exist in the economy in significant numbers. (29-30). Therefore he found Plaintiff not disabled within the meaning of the Act, and denied his application. (R. 31).

Plaintiff requested Appeals Council review of the ALJ's decision, but his request was denied. (R. 8-10, 687-89). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 8); Cowan v. Astrue, 552 F.3d 1182, 1184 (10th Cir. 2008). Plaintiff filed a complaint seeking judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)). Section 405(g) of the Act provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual

findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; accord, Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step, sequential process to evaluate disability. 20 C.F.R. § 404.1520 (2008); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Id. (quoting Lax, 489 F.3d at 1084.)

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments. Williams, 844 F.2d at 750-51. If the claimant's impairments do not meet or equal a listed impairment, the Commissioner assesses his RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the economy within Plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ did not properly evaluating the opinion of his treating physician, Dr. Shah; did not properly evaluate the credibility of Plaintiff's allegations of symptoms relating to his memory; and incorrectly assessed Plaintiff's RFC. The Commissioner argues that the ALJ properly considered the medical opinions; that substantial evidence in the record as a whole supports the credibility determination; and that the RFC assessment is proper.[2] The court determines that the ALJ erred in his RFC assessment because on an erroneous evaluation of Plaintiff's pancreas surgery, but the error is not harmless in the circumstances, and remand is necessary for the Commissioner to make RFC findings supported by substantial evidence in the record as a whole.

## III.   Discussion

In arguing that the ALJ's RFC assessment was improper, Plaintiff asserted, "The ALJ did not find more restrictive physical limitations concerning pancreatitis because the evidence did not establish that parts of Fallon's pancreas were removed. (Tr. 26). The ALJ's conclusion is clearly false." (Pl. Br. 23). Plaintiff also asserted that the ALJ erred in stating that Plaintiff's pancreatic surgery found no significant abnormalities. (Pl. Br. 24). The Commissioner admits that Plaintiff had part of his pancreas removed during the

---

[2]In his brief, Plaintiff claimed the RFC assessment was improper, in part, because the ALJ failed to clarify the meaning of "moderate" limitations as used in Dr. Shah's medical source statement. (Pl. Br. 27-28). The Commissioner addressed the "definition of moderate" in an argument separate from his analysis of the ALJ's RFC assessment, and Plaintiff's reply brief followed the Commissioner's lead in using a separate section to deal with the issue. (Comm'r Br. 22-23); (Reply 3-4). The court recognizes the arguments, but has determined that remand is necessary because of an error in the ALJ's RFC assessment and finds no need to address the remaining issues at this time.

"Whipple procedure" surgery, but argues that the ALJ's error in finding otherwise is harmless. (Comm'r Br. 19-20). He argues that the ALJ was correct to note that Plaintiff was not diagnosed with pancreatic cancer despite Plaintiff's contrary testimony, and that Plaintiff's abdominal examinations continued to be "essentially normal." (Comm'r Br. 20) (citing (R. 26, 37, 440) and quoting (R. 18)). He then concludes that the ALJ's error in stating no part of Plaintiff's pancreas was removed is harmless because it did not have "a substantial influence on the outcome or leave[] one in grave doubt as to whether it had such effect." (Comm'r Br. 19-20) (quoting United States v. Wacker, 72 F.3d 1453, 1473 (10th Cir. 1995)). In his reply brief, Plaintiff asserts that "Fallon had large portions of his pancreas removed," that the "ALJ had no grasp of the severity of Fallon's" condition, and that RFC "Limitations formulated under a material misunderstanding of an impairment cannot constitute harmless error." (Reply 5) (without citation to authority for the legal proposition asserted).

As a preliminary matter, the court questions application of law relevant to criminal proceedings to a review of the Commissioner's decision in Social Security Administration proceedings. In the case cited by the Commissioner, the appellant, Lipp, had been tried before a jury for charges including conspiracy to possess with intent to distribute approximately 2,000 pounds of marijuana, using a firearm in relation to a drug trafficking offense, and possession of a firearm by a convicted felon. Wacker, 72 F.3d at 1460. As relevant here, Lipp claimed the court erred in admitting as evidence journal entries of his prior felony convictions (for murder and aggravated assault with a deadly weapon)

merely for the purpose of proving that Lipp was a convicted felon despite Lipp's offer to stipulate to the fact of his prior convictions. Id. at 1471. The appellate court found the district court had erred in admitting the journal entries, and proceeded to determine if the error was harmless. Id. at 1473. It was in this context that the court stated the rule that "the error is deemed harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." Id. (quotation marks and citations omitted). The court determined the district court's error was harmless because the prejudice to Lipp was slight in that the government "did not parade the convictions before the jury or exploit them in any prejudicial fashion," and because of "the overwhelming evidence of guilt." Id. at 1473-74. The court noted that it could not find that the error had a substantial influence on the outcome of the trial or that the court was in grave doubt about such an effect. Id. at 1474.

In Wacker, Lipp was found guilty of crimes "beyond a reasonable doubt" by twelve jurors. There, it was appropriate to ask whether the court's error in managing the trial had a "substantial influence" on the outcome or leaves one in "grave doubt" whether it had such an effect. In the administrative proceedings here, a single ALJ was charged with determining whether Plaintiff is disabled. The court must determine whether the ALJ applied the correct legal standard and whether substantial evidence on the record as a whole supports his decision. Because the ALJ is the individual who both managed the proceedings and made the decision, it is hard to determine precisely how much influence

8

one error had upon his deliberations, and therefore, any error tends to leave one with doubts (grave or otherwise) whether the error had substantial influence on the outcome.

Moreover, the Tenth Circuit has addressed use of the harmless error doctrine in judicial review of decisions by administrative agencies generally--and decisions by the Commissioner specifically. Allen v. Barnhart, 357 F.3d 1140, 1144-45 (10th Cir. 2004) (citing St. Anthony Hosp. v. United States Dep't of Health & Human Servs., 309 F.3d 680, 691 (10th Cir. 2002); Glass v. Shalala, 43 F.3d 1392, 1396-97 (10th Cir. 1994); Gay v. Sullivan, 986 F.2d 1336, 1341 n. 3 (10th Cir. 1993); and Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990)). In Allen the court noted two considerations which counsel a cautious, if not skeptical, approach to using harmless error analysis in Social Security cases.

> First, if too liberally embraced, it could obscure the important institutional boundary preserved by Drapeau's admonition that courts avoid usurping the administrative tribunal's responsibility to find the facts. Second, to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action recognized in SEC v. Chenery Corp., 318 U.S. 80, 63 S. Ct. 454, 87 L. Ed. 626 (1943) and its progeny.

Allen, 357 F.3d at 1145 (citing Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001) ("we are not in a position to draw factual conclusions on behalf of the ALJ.")). The court concluded:

> With these caveats, it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable

9

administrative factfinder, following the correct analysis, could have
resolved the factual matter in any other way.

Id., 357 F.3d at 1145.

Thus, the proper analysis in determining whether an error is harmless in the context of review of a decision of the Commissioner is to ask first whether the ALJ at least considered the evidence. If so, then the court must determine whether any reasonable factfinder following the correct analysis could have resolved the issue differently than the ALJ.

Here, the ALJ discussed Plaintiff's "Whipple" surgery[3] and its outcome:

The claimant underwent Whipple resection surgery on July 7, 2003 for what was thought to be a mucinous cyst adenoma of the pancreas. Surgical findings showed only chronic pancreatitis with no evidence of tumor or malignancy. There was a possibility of mucous temporarily polluting the claimant's biliary tree. The claimant recovered well from the surgery and was released from care by his surgeon on August 27, 2003. There was very little evidence of malabsorption and no evidence of diabetes (exhibits B2F/75 [(R. 307)]; B4F/190,193[(R. 399, 402)]). He has continued to describe intermittent abdominal discomfort. He was prescribed Pancrease for pancreatic exocrine insufficiency on December 29, 2005 (exhibit B13F/284-285[(R. 513-14]). Abdominal examination findings continued to be essentially normal (exhibit B16F [(R. 538-87)]).

---

[3]"Whipple procedure" is a complex surgery used for some patients with pancreatic cancer in which the "head" of the pancreas, the duodenum, the gall bladder, a portion of the common bile duct, and sometimes part of the stomach are removed, and the remaining intestine, bile duct, and pancreas are reconnected. "Whipple Procedure," available at http://www.webmd.com/cancer/pancreatic-cancer/whipple-procedure (last viewed, November 5, 2010) (copy attached); see also, 6 J. E. Schmidt, M.D., Atty's Dictionary of Medicine W-25 (Matthew Bender, Release 44, October 2010) (Whipple's Procedure). The surgery is named after the first American surgeon to perform the operation in 1935, Allen Whipple, M.D. Id. It is also known as a pancreaticoduodenectomy. Id.

10

(R. 18). Later, in making his RFC assessment the ALJ discussed Plaintiff's allegation of pancreatic cancer and his pancreatic surgery:

> The claimant has never been diagnosed with pancreatic cancer as alleged (exhibit B22F/403[(617)]) nor had part of his pancreas removed as described during testimony. His pancreatic surgery found no significant abnormalities.

(R. 26-27).

As the ALJ noted, Plaintiff indeed had a Whipple procedure for a suspected mucinous cyst adenoma of the pancreas. (R. 402, 403); accord (R. 427) ("large dominant cystic mass" in the head of the pancreas, "believed to have a cystic neoplasm of the head of the pancreas"). Moreover, the surgery revealed only chronic pancreatitis with no evidence of malignancy. (R. 402). However, the medical evidence does not support the ALJ's finding that there was no evidence of tumor. Rather, the postoperative diagnosis remained the same as the preoperative diagnosis, "Cystic mass at the head of the pancreas." (R. 431). Moreover, the record reveals that the cystic neoplasm or cystic mass was excised along with the head of the pancreas. (R. 434-36).

A "tumor" is defined as "any swelling," and a synonym for "tumor" is "neoplasm." Steadman's Medical Dictionary 1871 (Marjory Spraycar et al., eds., 26th ed. 1995). "Neoplasm" is defined as "An abnormal tissue that grows by cellular proliferation more rapidly than normal and continues to grow after the stimuli that initiated the new growth cease. N[eoplasm]s show partial or complete lack of structural organization and functional coordination with the normal tissue, and usually form a distinct mass of tissue

11

which may be either benign (benign tumor) or malignant (cancer)." Id. at 1182. "Mass" is defined as "A lump or aggregation of coherent material." Id. at 1067. Therefore, since the evidence shows a cystic mass or a cystic neoplasm at the head of Plaintiff's pancreas which was surgically removed along with the head of the pancreas, it is error for the ALJ to find there was no evidence of tumor.

Further, the evidence is not clear that Plaintiff's "pancreatic surgery found no significant abnormalities." (R. 27). The surgery revealed a cystic mass in the head of the pancreas, and the head of the pancreas was removed. (R. 431-39). "The pathology results showed mucinous cystic pancreas and no evidence for malignant disease, despite the fact that preoperatively he had all the indications pointing towards a type of malignancy." (R. 428). The findings on the "Operative Report" included "Fatty infiltration of the liver; hepatic cysts as seen on CT scan; [and] 8 cm complex cystic mass at the head of the pancreas." (R. 431). After noting "multiple small areas of fatty infiltration," a "dark cystic-like structural in the left lateral segment," (R. 432), and that "The pancreatic mass was easily palpated," the "Operative Report" stated, "We did not find any other intra-abdominal abnormalities through the remainder of the operation." (R. 433). However, thereafter, the report notes that "we encountered 2 large lymph nodes, both of which were excised and sent off to Pathology for frozen section," (R. 434), that "the parenchyma of the pancreas was quite fibrotic, and there were multiple areas of calcification, (435), and that "the area of the omentum that had been mobilized off of the

12

transverse colon in the right abdomen appeared somewhat ischemic. For this reason, it was excised." (438).

The report's statement that "We did not find any <u>other</u> intra-abdominal abnormalities" tends to indicate that there were <u>some</u> abnormalities. (R. 433) (emphasis added). Moreover, neither the ALJ nor this court is a medical expert qualified to find that the records regarding the operation do not reveal any significant abnormalities, absent some indication to that effect in the medical records themselves. The ALJ did not cite to such evidence, and the court does not find it. The court concludes that the ALJ erred in finding (1) that no part of Plaintiff's pancreas was removed, that (2) Plaintiff's surgery showed no evidence of tumor, and that (3) Plaintiff's surgery showed no significant abnormalities. The Commissioner admits error numbered (1) above, but says nothing about the other two. He then argues that the error was harmless.

Applying the harmless error rule as explained in <u>Allen</u>, the court must find the ALJ's errors in this case are not harmless. <u>Allen</u>, 357 F.3d at 1145. First, the record is clear that the ALJ did consider the evidence regarding Plaintiff's pancreatic surgery, but merely erred in his consideration of that evidence. Therefore, the court asks whether any reasonable factfinder following the correct analysis could have resolved the issue of disability resulting from Plaintiff's gastrointestinal complaints differently than did the ALJ in this case.

The Commissioner points to the ALJ's findings that Plaintiff's gastrointestinal complaints including vomiting were related more to drinking alcohol than to his

gastrointestinal condition. He argues that the ALJ was correct to note that Plaintiff was not diagnosed with pancreatic cancer despite Plaintiff's contrary testimony, and that Plaintiff's abdominal examinations continued to be "essentially normal." (Comm'r Br. 20) (citing (R. 26, 37, 440) and quoting (R. 18)). The fact that Plaintiff stated he had a bout with pancreatic cancer when he did not is an appropriate consideration when considering the credibility of his allegations of symptoms. It says little beyond that, however, regarding whether his gastrointestinal symptoms and his pancreatic surgery reveal greater limitations than found by the ALJ. Although there is record evidence which might support the ALJ's conclusion, the court cannot say that no reasonable factfinder properly evaluating the evidence regarding Plaintiff's surgery could find that Plaintiff's gastrointestinal complaints are disabling apart from his drinking alcohol.

First, although Exhibit 16F tends to support the ALJ's finding that Plaintiff's abdominal examinations continue to be "essentially normal," Plaintiff reported diarrhea on November 20, 2007 in a record contained in that exhibit. (R. 540). Moreover, other exhibits show other abdominal findings. On June 25, 2008 Plaintiff reported abdominal tenderness (R. 644), decreased appetite, nausea and vomiting, and abdominal pain. (R. 643). The record reveals he was vomiting blood. (R. 641, 642). He had burning pain in the abdomen and hematemesis, and reported vomiting liquids almost every morning since his operation. (R. 650). Dr. Galvan reported Plaintiff "vomits every morning," has "an atrophic remaining pancreas with calcification," "probably has chronic calcific pancreatitis and if he is not now, he will become diabetic." This is evidence from which

14

an ALJ might give greater credit to Plaintiff's allegations, and might find greater limitations in his RFC. The court's finding that a reasonable factfinder might determine greater limitations is further supported by the court's findings of three separate errors in the ALJ's evaluation of the record evidence regarding Plaintiff's surgery, and by the fact that the Commissioner found Plaintiff disabled through August 2004, more than a year after the pancreatic surgery at issue here. Remand is necessary for a proper evaluation of the evidence regarding Plaintiff's surgery.

Having found error in the ALJ's decision necessitating remand, the court chooses not to address Plaintiff's remaining arguments. The errors found by the court occurred in the ALJ's assessment of Plaintiff's RFC after step three and before step four of the sequential evaluation process, and each of the other errors alleged by Plaintiff also constitute a part of a proper RFC assessment. Soc. Sec. Ruling (SSR) 96-8p, West's Soc. Sec. Reporting Serv., Rulings 149-50 (Supp. 2010) (RFC assessment includes evaluation of allegations of symptoms and of medical opinions). Therefore, the Commissioner must perform another RFC assessment in this case, and Plaintiff may make his remaining arguments to the Commissioner on remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Dated this 18th day of November 2010, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**